Rockingham
No. 79-246

THE STATE OF NEW HAMPSHIRE

v.

NORMA KOSKI

February 14, 1980

*Thomas D. Rath*, attorney general (*Peter W. Heed*, assistant attorney general, orally), for the State.

*Benjamin Hiller*, of Massachusetts, by brief and orally, for the defendant, Norma Koski.

BOIS, J. The defendant appeals from a conviction for criminal trespass in connection with the May 1, 1977, occupation of the Seabrook Nuclear Power Plant site. We affirm.

The defendant was arrested along with a large number of other demonstrators for occupying land at the site of the Seabrook Nuclear Power Plant. Prior to her arrest, she and the other demonstrators had allegedly been repeatedly warned by State police that they would face

charges of criminal trespass if they did not vacate the premises. The defendant was later charged and convicted of criminal trespass in violation of RSA 635:2. She was fined $100 and sentenced to fifteen days in the Brentwood House of Correction with "13 days credit for time. served." Following a de novo trial in superior court on appeal, the defendant was convicted by jury for criminal trespass. She was then fined $200 and sentenced to six months in the Rockingham County House of Correction with three months suspended. The defendant's exceptions to certain rulings and the sentence were reserved and transferred by the Trial Court (*Bean*, J.).

The defendant first argues that the court erred in its charge to the jury because it permitted conviction without proof that the defendant remained on the property "knowing that she was not licensed or privileged to do so," thereby eliminating an element of criminal trespass from the jury's consideration.

■ RSA 635:2 provides in part: "A person is guilty of criminal trespass if, knowing that he is not licensed or privileged to do so, he enters or remains in any place." The court read this statute verbatim in its charge to the jury. The court also stated that the definition of "knowingly" was that "the person is aware of his conduct, that the person knows what he is doing."

We do not find that the court's charge was erroneous. We hold that the charge considered as a whole made the requirement of knowledge of lack of privilege or license sufficiently clear, and that it is improbable that the jury could have been misled. *State v. Wentworth*, 118 N.H. 832, 841, 395 A.2d 858, 864 (1978).

■ The defendant next argues that the charge and ruling by the court that a defense of competing harms under RSA 627:3 was not available constituted a denial of due process. This court has previously held that a competing harms defense under RSA 627:3 was not available to a defendant charged with criminal trespass of a nuclear power site. *State v. Dorsey*, 118 N.H. 844, 845–46, 395 A.2d 855, 856 (1978). We find *Dorsey* controlling, and are not persuaded by the defendant's arguments that a different result should be reached in this case. In reaching this conclusion, we note that the defendant was allowed to read RSA 627:3 to the jury, and stated in her closing argument that she could not be convicted of criminal trespass because she believed she had a license or privilege to be on the nuclear power site under the competing harms statute. Although competing harms was not available as an affirmative defense to the defendant, there was evidence before the jury regarding the competing harms statute as it

related to her knowledge that she was not licensed or privileged to remain on the site. She has, therefore, no cause to complain.

The defendant next argues that the court erred in refusing to allow the defendant's mother to testify as to statements made to her by the defendant explaining "what I was doing and why" before going onto the site of the nuclear plant. The defendant contends that the court concluded that such testimony was hearsay and erred by not allowing it to come in under the "state of mind" exception to the hearsay rule.

■■ We cannot be certain of the basis for the trial court's refusal to allow the mother's testimony because no grounds were stated when the objection was made and the defendant made no offer of proof. Even if we were to assume that the defendant's contentions are correct, however, we would not find reversible error because the evidence that the defendant was attempting to introduce regarding her belief that she had a license or privilege to be on the site of the nuclear plant was fully conveyed to the jury through her own testimony. *See Chapman v. California*, 386 U.S. 18 (1966). Prior consistent statements are not admissible in the absence of evidence of prior inconsistent statements. *Lynch v. Sprague*, 95 N.H. 485, 488, 66 A.2d 697, 700 (1949); *see State v. Ballentine*, 116 N.H. 120, 121, 352 A.2d 403, 404 (1976); *Twardosky v. Company*, 95 N.H. 279, 284, 62 A.2d 723, 727 (1948).

The defendant finally argues that her sentence violated her constitutional rights. She contends that the sentence received is a disproportionate punishment prohibited by the eighth amendment, that the sentence violates equal protection and freedom of speech because it was based upon the court's antagonism toward civil disobedience, and that the sentence violates due process because it was a significantly harsher sentence following de novo trial and was intended to discourage appeals by other co-defendants.

■ The contention that the defendant's sentence is a disproportionate punishment is without merit. We discussed this issue at length in *State v. Wentworth supra* at 841–43, 395 A.2d at 863–66, and are not persuaded by the defendant's arguments that our reasoning was incorrect. Nor do we find it necessary to reiterate our analysis in this opinion.

■ The record is void of any indication that the court based the sentence upon an antagonism toward civil disobedience. Accordingly, we summarily dismiss the defendant's second contention.

■ The final issue we address is whether the imposition of a harsher sentence following a de novo trial in this case violated due process. It is well established that a person convicted of an offense is

entitled to pursue his statutory right to a trial de novo without apprehension that the State will retaliate by substituting a more serious charge for the original one, or by attempting to impose a heavier penalty for the same acts originally charged merely because the defendant chooses to exercise his right to a new trial. *Blackledge v. Perry*, 417 U.S. 21, 27 (1974); *Lovett v. Butterworth*, 610 F.2d 1002 (1st Cir. 1979); *see North Carolina v. Pearce*, 395 U.S. 711, 723–26 (1969).

Although *Blackledge*, *Lovett* and *Pearce* can each be distinguished from this case on its facts, we recognize that the thrust of those decisions is to safeguard the freedom of defendants to exercise their right of appeal. They serve as a check against both prosecutorial and judicial vindictiveness, and also prevent the chilling of the exercise of such rights by other defendants who must make their choices under similar circumstances in the future. *Lovett v. Butterworth supra; United States v. DeMarco*, 550 F.2d 1224, 1227 (9th Cir.), *cert. denied*, 434 U.S. 827 (1977).

We do not find the aforementioned indicia of vindictiveness on the part of either the judge or prosecutor in this case. While we seriously question the propriety of certain remarks allegedly made by the prosecutor to a newspaper regarding appeals by the demonstrators, there is no evidence of vindictiveness or even the appearance of vindictiveness in the record before us.

■ Due process is only offended when there is a "realistic likelihood" that an increased punishment is the result of vindictiveness. *See Blackledge v. Perry supra* at 27. As was the case in *Colten v. Kentucky*, 407 U.S. 104, 116–17 (1972), the trial court that conducted the defendant's trial and imposed the final sentence in this case was not the court from which the defendant sought a different result on appeal; "[n]or was the de novo court even asked to find error in another's work . . . ." The United States Supreme Court explained:

> It may often be that the superior court will impose a punishment more severe than that received from the inferior court. But it no more follows that such a sentence is a vindictive penalty for seeking a superior court trial than that the inferior court imposed a lenient penalty. The trial *de novo* represents a completely fresh determination of guilt or innocence. It is not an appeal on the record. As far as we know, the record from the lower court is not before the superior court and is irrelevant to its proceedings.

*Id.* at 116–17.

■ The sentence in this case was not imposed to deter de novo trials, but to deter illegal actions, and was fully justified in the furtherance of that purpose. We hold that the court's sentence did not violate due process and did not constitute an abuse of discretion.

*Affirmed.*

All concurred.